UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TERRON BELLE, WILLIAM RIOS, RICHMOND
APPIAH, EDISON QUITO, LUIS RIOS, on behalf
of themselves and others similarly situated,

        Plaintiffs,

   -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICERS BRIAN DESTEFANO,
DANIEL MARDJONOVIC, STEVEN BARRY,
and "JOHN DOE" 1-50,
in their individual and official capacities,

        Defendants.
-------------------------------------------------------------x

DECLARATION OF
CYRUS JOUBIN IN
SUPPORT OF
PLAINTIFFS' MOTION
TO AMEND

19 cv 2673 (VEC)

## DECLARATION OF CYRUS JOUBIN

  **Cyrus Joubin**, an attorney duly admitted to practice before this Court, hereby declares pursuant to 28 U.S.C. §1746 that the following is true and correct:

  1.  I am one of the attorneys for Plaintiffs in this action, and I am familiar with the pleadings and proceedings in this action.

  2.  I make this Declaration in support of Plaintiffs' motion for leave to file a Third Amended Complaint.

**The Third Amended Complaint**

  3.  Annexed hereto as Exhibit "A" is a redlined version of the proposed Third Amended Complaint indicating the proposed revisions to the Second Amended Complaint.

  4.  On July 8, 2021, Plaintiffs apprised Defendants of their desire to amend the complaint, and of the specific amendments they wished to make. On July 12,

Plaintiffs showed a redlined version of their Third Amended Complaint to Defendants, and asked Defendants to state the grounds on which they opposed Plaintiffs' proposed amendments.

     5.     On July 21, defense counsel Amanda Rolon expressed via email Defendants' position on the proposed amendments:

- City Defendants consent to the following amendments (a) removal of Jameel Lang from caption and allegations, and (b) change of incident year for Luis Rios (2018 to 2017).

- City Defendants do **not** consent to the following amendments (c) change of incident date for Edison Quito; (d) adding Euris Paulino as a defendant; (e) change of incident year for Bonacio Crespi.  First, in regard to Edison Quito, defendants maintain that the July 14, 2017 incident is not the same incident or claim originally alleged, and therefore the proposed amendment does not relate back to the amended pleading.  As discussed at length, this incident is distinct from that originally alleged on several critical grounds, including but not limited to: issuance of summons, incident location, time of incident, identification provided, description of officers (physical and clothing), description of vehicle, etc.  Accordingly, plaintiff is time-barred from bringing any futile claims in connection with the July 14, 2017 incident, and Euris Paulino would be unduly prejudiced in defending a claim where he did not receive timely notice of such action.  In addition, defendants would be unduly prejudiced by adding this new incident date so close to the end of fact discovery as both plaintiffs and defendants would seek additional discovery. Plaintiffs have already served informal requests which seem inappropriate at this stage since the proposed amendment/new incident date has not yet been allowed by the Court, and would result in the defendants also needing to take discovery related to this new incident which plaintiffs seek to add on the eve of fact discovery closing.  Therefore, including but not limited to those reasons, defendants do not consent to (c) and (d).  Second, we object to (e) because the proposed amendment would be futile as plaintiff Crespi signed a general release which bars any claims predating the release (October 26, 2017).

     6.     On July 29, Plaintiffs Crespi and Lang filed a letter-motion seeking to withdraw as named plaintiffs in this action.  ECF No. 138.  On July 30, the Court granted their applications.  ECF No. 139.

7.      Defendants consented to the removal of Crespi's name from the caption and allegations, and maintained their objections to the amendments relating to Plaintiff Edison Quito on the grounds stated in Ms. Rolon's July 21 email.

**Plaintiffs overcame various hurdles in discovery to learn that NYPD Officer Euris Paulino was one of the officers who stopped and conducted a records search of Plaintiff Edison Quito**

8.      After an initial round of audits for Edison Quito did not, according to Defendants, yield any results, Plaintiffs sought to have input over the audit search terms and to conduct "fuzzy" audits in order to account for potential typos and mistakes when officers typed Plaintiffs' names and dates of birth into the Domain Awareness System fields.  Plaintiffs sought to have this input after deposing NYPD Sergeant Joseph Klubnick on October 29, 2020.  Klubnick, who had conducted some of the NYPD audits himself and obtained additional audit results from a third-party vendor (first identified as "Vexcel" during his deposition), described some of the Domain Awareness System ("DAS") search fields and methods.  From Plaintiffs' perspective, Klubnick's testimony showed the many reasons why it was inappropriate for Defendants to have full control over the audit parameters.  Nevertheless, Defendants objected to allowing Plaintiffs' input.  Defendants also objected to producing the actual audit results, even though such records were responsive to Plaintiffs' Second Requests for Production, originally served on March 5, 2020.

9.      At a discovery conference on December 15, 2020, the Court ordered Defendants to conduct audits using fuzzy search terms with input from the Plaintiffs about the search terms.  In light of the Court's ruling, Plaintiffs asked Defendants about the capabilities of the NYPD and Vexcel Corporation (a third-party vendor servicing

3

DAS for the City of New York) to conduct the fuzzy audits, and Defendants took over two months to answer this basic question.

10. Specifically, on December 21, 2020, Plaintiffs first wrote to defense counsel asking what the audit capacities of Vexcel or the NYPD were regarding wildcard or fuzzy searches, and sent proposed search terms on January 13, 2021. Despite follow up by Plaintiffs, no substantive response was received for nearly three weeks (on February 1, 2021). *See* February 1, 2021 Status Letter, ECF No. 99. After receiving clarification that fuzzy searches were possible, with several caveats, Plaintiffs immediately requested further clarification to finalize their search terms. No substantive response was received on this for another three weeks. *See* March 1, 2021 Status Letter, ECF No. 101 (indicating that on February 25, Defendants made additional disclosures about Vexcel's audit capacities that finally enabled the parties to agree that Vexcel would be in the best position to conduct the remaining records search audits in this case). On March 3, Plaintiffs proposed fuzzy search terms for Vexcel Corporation's audits of alleged records searches for six of the named Plaintiffs, and on March 8, Plaintiffs provided a revised list of search terms. *See* April 1, 2021 Status Letter, ECF No. 105.

11. The month of March 2021 – the month the Statute of Limitations tolled for Quito – went by with few concrete updates from Defendants regarding Vexcel's audit results. Plaintiff consistently sought updates from Defendants about the progress of the audits, and urged Defendants to agree to a regular time each week to meet and confer on discovery issues that were routinely cropping up.

12. Given the numerous delays and miscommunications in the course of obtaining information from Vexcel through the Defendants, Plaintiffs repeatedly asked for a direct line of communication with Vexcel, but Defendants refused to allow this.

13. On April 1, 2021, Defendants served their 10th Supplemental Disclosures, which included the positive results of an audit that Vexcel conducted for Plaintiff Edison Quito. Edison Quito is sometimes known as Edison Quito-Pelaez. "Pelaez" is his father's last name, but Edison usually uses just "Quito" as his last name. Vexcel's audits searched for the name "Edison Pelaez" and permutations of that name that were typed into the Domain Awareness System in the three-month period of June 1 to September 1, 2017. Vexcel's audits yielded four significant results from July 14, 2017 at 10:30 p.m.: two results for "edison pelaez" with a date of birth "1/28/1993" and two results for "edison pellaez" with a date of birth "1/28/1993"[1]. These audit results signified that on July 14, 2017, at 10:30 p.m., a police officer typed that information into the search fields of the Domain Awareness System. The audit indicated that the officer used a "Tablet" device to conduct the DAS searches. The audit further indicated the identity of the NYPD entered who typed Quito's information: Police Officer Euris Paulino.

14. On April 5, 2021, within days of learning Officer Paulino's identity, Plaintiffs delivered a subpoena to him noticing his deposition for April 19, 2021 (and informed defense counsel in advance). During the course of meeting and conferring with Defendants on the issue of Paulino's deposition, Plaintiffs learned that on July 14, 2017 Officer Paulino worked at the NYPD 26th Precinct, which encompasses Plaintiff Quito's apartment building where the stop and warrant check alleged in the Complaint took place.

---

[1] This typed-in date of birth is off by one digit from Edison's actual date of birth – validating the importance of the fuzzy search parameters.

Defense counsel KeAupuni Akina and Stephanie Vilella Alonso further represented that on July 14, 2017 Officer Paulino was a Conditions officer, which, they confirmed, was a plain-clothes unit – another fact that conformed with Plaintiff Quito's allegation that he was stopped and had his ID taken by plain-clothes police officers.  Plaintiffs further noted that the time of the record search, 10:30 pm, matched the time that Quito alleged his ID was taken.  Based on these, and other, forms of congruence, Plaintiffs contended that they were entitled to take Paulino's deposition.

15. Defendants continued to object, insisting that the July 14, 2017 Quito-Paulino incident (Defendants conceded *some* interaction took place that day between the two) was different than what Quito alleged in the complaint.  Defendants produced an OATH summons for public urination purportedly served to Quito by Officer Paulino's partner that evening, Officer Soul Kim; Defendants argued that this summons proved that the Paulino incident was different than the one described in the complaint.  During meet and confers, Plaintiffs questioned the assumption that the mere writing of a summons means that the summons was properly issued to an individual, and noted that Quito has never received a summons for public urination.  This OATH summons – which referred to a location just one block away from the location Quito alleged in the complaint – raised numerous questions in Plaintiffs' eyes.  For example, it was issued at 10:30 pm, when Paulino and his partner were, according to Paulino's memobook, back at the precinct for their meal – an inconsistency Defendants could not explain.

16. On May 7, 2021, Plaintiff Edison Quito was deposed.  As discussed below, Quito provided a very specific physical description of the male Hispanic officer who took his ID.  After the deposition, Defendants never informed Plaintiffs of how

6

Quito's description of the male Hispanic officer matched Paulino. Instead, Defendants continued to assert that Paulino should not be deposed because of the summons.

17. Yet while Defendants objected to Paulino's deposition for over two months, they kept open the possibility that additional information they were gathering could change their view about his deposition. Defendants agreed to conduct limited discovery to determine whether the incident involving Officer Paulino's record search matched the allegations made by Plaintiff Quito. While Defendants produced some relevant information – such as the OATH Summons issued for Quito by Paulino's partner as well as Paulino's memobook entries – Defendants continued to assert that Paulino's deposition was not warranted in view of the Oath Summons. Plaintiffs continuously pressed for additional information that could shed further light on the July 14, 2017 incident, including the memobook of Officer Kim (retired and living out of the country) and Officer Kim's deposition testimony. For example, when Defendants produced Paulino's "Impact OT" Roll Call for July 14, 2018, more questions emerged from the fact that the Roll Call indicated that Paulino was assigned to a different partner and vehicle than those written in his memobook; such questions, Plaintiffs contended, countenanced in favor of allowing Paulino's deposition.

18. On June 15, 2021, in the early afternoon before the parties were scheduled to call the Court about this issue (and the depositions of other officers assigned to the July 14, 2017 Impact OT shift), Defendants agreed for the first time to produce Paulino for his deposition on June 30, 2021.

19. During Officer Paulino's deposition on June 30, which was conducted remotely via Zoom, I took photographs of Officer Paulino on my computer screen. The

day after the deposition, Plaintiff Quito reviewed those photographs and identified Paulino as the male Hispanic officer who, as alleged in the Complaint, stopped him and took his ID in front of his apartment building.

20. Crucially, Quito's descriptions of Paulino *prior to* Paulino's deposition approximated Paulino's physical appearance and description of himself. The Second Amended Complaint – filed on November 6, 2020 – describes Paulino as a "male, plain-clothes" "Hispanic" officer. *See* ECF No. 77 at ¶ 96. Quito described that officer at his May 7, 2021 deposition as "five-six, five-seven [in height], around there" (Quito Dep. 64:5-6) and "kind of chunky" (Id. at 61:13). Paulino, who appears Hispanic, described himself as "five nine" in height (Paulino Dep. at 13:2) and "one-eighty" in weight (Id. at 13:5), with weight that has been "up and down" since July 14, 2017 (Id. at. 13:9). Quito was also accurate in describing Paulino as having "similar skin tone" to himself (Quito Dep. at 64:12-13), that is, an olive complexion. Finally, Plaintiff Quito's cousin (Kevin Quito) and wife (Diana Ordonez) corroborate important details of the incident. For example, his wife recalls returning to her building – where she saw Plaintiff after the alleged stop and records search – after visiting her aunt in Queens, a visit she routinely made on Fridays (July 14, 2017 was a Friday) during the summer of 2017.

21. With respect to the July 14, 2017 Quito-Paulino incident – there is more discovery that Plaintiffs have long sought, and the parties continue to negotiate discovery related to this incident. On July 2, 2021, two days after Paulino's deposition, Plaintiffs requested the following list of discovery from Defendants: (1) The 26th Precinct log book that (according to Paulino's deposition testimony) officers had to sign in and out of when they entered and exited the precinct; (2) Officer Paulino's personnel records

indicating the units / assignments within 26th Precinct that he worked for in July 2017; (3) All ICAD / Sprint Reports from July 14, 2017 that documented radio runs in connection with 351 St. Nicholas Avenue [Quito's apartment building]; (4) All patrol guide or other NYPD policies regarding Paulino's "IMPACT OT" assignment; and (5) All patrol guide or other NYPD policies regarding the Conditions Unit of the NYPD (where Paulino also worked in July 2017).

22. On July 9, Plaintiffs followed up with Defendants about these discovery requests (which Defendants objected to), and made two additional requests: (6) All of Paulino's memobook entries from June 1 to September 1, 2017; and (7) All documents describing the vehicles on the July 14, 2017 Roll Call and in Paulino's memobook on July 14, 2017 – specifically Vehicle Numbers #3116 and #3230 (Roll Call) and #3649 (memobook). Plaintiffs also continue to reiterate their need for the memobook entries of Paulino's partner that day, Soul Kim. Plaintiffs have been calling for the production of some of these items, such as the ICAD / Sprint Reports and Officer Kim's memobook entries, since April 2020. By the end of July, Defendants maintained their objections to producing these items and refused to commit to producing any of these items by a date certain. These items shed light on fundamental factual disputes, such as whether Officer Paulino was wearing plain clothes and driving an unmarked car on July 14, 2017.

23. Plaintiffs' pursuit of relevant discovery has been relentless. Plaintiffs continue to schedule regular meet and confers with Defendants about these discovery issues as they seek to obtain as much information as possible about the July 14, 2017 incident that is in Defendants' possession or control. On April 23, Plaintiffs inquired about whether defense counsel had reviewed disciplinary records for Officers Paulino

and Kim, and whether there are any allegations relating to veracity, false statements, or improperly filling out police paperwork. On April 27, Defense counsel responded that they do not have any information about such allegations. On April 29, Plaintiffs reiterated their need for stop reports related to the July 14, 2017 incident; and, alternatively, if there is no stop report, Plaintiffs requested the QAD Audits of stop reports, PIE audits, and RAND audits of missing stop reports for the 26th precinct for the timeframe that included July 14, 2017. All of this information is responsive to the second set of discovery demands that Plaintiffs served on March 5, 2020.

24. Exhibit "B" is Plaintiff Edison Quito's deposition transcript.

25. Exhibit "C" is Officer Euris Paulino's deposition transcript.

**Plaintiffs' discovery that the Luis Rios incident took place in 2017, not 2018**

26. According to the Second Amended Complaint, Plaintiff Luis Rios was stopped and had his ID taken for the purpose of a records search in the "late winter or early spring of 2018." ECF No. 77 at ¶ 108. Bonacio Crespi and Jameel Lang were also named plaintiffs in connection with the Luis Rios incident.

27. On July 31, 2020, Defendants supplemented their responses to Plaintiffs' discovery requests to include Z Finest Audit Search Results for Bonacio Crespi (the documents were Bates Numbered by Defendants DEF 18 – 37). According to this document, a "Drivers License Check" took place for Crespi on March 12, 2018 at around 4 am. Plaintiffs followed up and asked Defendants for the identity of the officer who conducted the background search of Crespi using his ID, and also sought any documents (such as memobook entries) that would explain why the officer conducted the records

search of Crespi. Defendants subsequently identified the officer as Damani Morgan, and on December 29, 2020, Defendants provided Plaintiffs with Officer Morgan's memobook entries from March 12, 2018 (DEF 134-135); those memobook entries indicated that Officer Morgan worked as a Highway Safety officer on March 12, 2018.

28. On December 30, 2020, Plaintiffs conducted the deposition of Officer Morgan. Officer Morgan's testimony made it clear that the Luis Rios incident described in the Second Amended Complaint actually took place in 2017. Officer Morgan testified that he conducted a records search of Crespi in connection with a car accident that, Crespi recalled, took place the year *after* the incident alleged in the Complaint. Plaintiffs promptly notified Defendants of this, and all subsequent audits in connection with the Rios incident were, with the consent of both parties, directed to the year 2017 instead of 2018.

29. On April 12, 2021, in their Twelfth Supplemental Disclosures, Defendants produced the Vexcel audits results for Luis Rios, Bonacio Crespi, and Jameel Lang in 2017. These results showed records searches under each of their three names in 2017, but there were no records searches on the same time and date.

DATED: New York, New York               /s/
           August 6, 2021         CYRUS JOUBIN, ESQ.
                                            43 West 43rd Street, Suite 119
                                            New York, NY 10036
                                            (703) 851-2467
                                            joubinlaw@gmail.com
                                            Attorney for Plaintiffs