**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
TERRON BELLE, WILLIAM RIOS, RICHMOND
APPIAH, EDISON QUITO, LUIS RIOS, on behalf
of themselves and others similarly situated,

                              Plaintiffs,

              -against-                              **19 cv 2673 (VEC)**


THE CITY OF NEW YORK, NEW YORK
CITY POLICE OFFICERS BRIAN DESTEFANO,

DANIEL MARDJONOVIC, STEVEN BARRY,

and "JOHN DOE" 1-50,
in their individual and official capacities,

                              Defendants.

------------------------------------------------------------x


### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

CYRUS JOUBIN                          DAVID J. KAHNE
43 West 43rd Street, Suite 119        TALONA H. HOLBERT
New York, NY 10036                    MICHAEL G. MALLON
                                      STROOCK & STROOCK & LAVAN
                                      LLP
GEORGE FARAH                          180 Maiden Lane
MATTHEW HANDLEY                       New York, NY 10038
REBECCA P. CHANG
HANDLEY FARAH & ANDERSON
PLLC                                  COREY STOUGHTON
777 6th Street NW, 11th Fl.           MOLLY GRIFFARD
Washington, DC 20001                  THE LEGAL AID SOCIETY
                                      199 Water Street, 6th Floor
                                      New York, New York 10038

                                      *Attorneys for Plaintiffs*


August 6, 2021

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES................................................................................... iii

INTRODUCTION ...............................................................................................1

STATEMENT OF RELEVANT FACTS................................................................3

    *Plaintiff Edison Quito's Proposed Amendments* .......................................3

    *Plaintiff Luis* Rios' *Amended Allegations* ................................................8

ARGUMENT ......................................................................................................8

    I.     The Court Should Grant Leave to Amend Mr. Quito's Claims Under
          Federal Rules of Civil Procedure 15 and 16(b) ..........................................8

          A.    Mr. Quito's Proposed Amendments Meet the "Good Cause"
               Standard Under Rule 16(b).......................................................9

               1.    Plaintiffs have acted diligently in identifying PO Euris
                      Paulino and the exact date of Mr. Quito's stop and records
                      search ...........................................................................9

               2.    Defendants are not unduly prejudiced by Mr. Quito's
                      proposed Amendments .....................................................11

              B.    Mr. Quito's Proposed Amendments Meet the Liberal Standards of
               Rule 15...................................................................................12

              C.    Mr. Quito's Amendments Relate Back to His Original Complaint
               and Should Be Granted Under Rule 15 .......................................15

               1.    The Substitution Relates Back Under 15(c)(1)(A) and N.Y.
                      C.P.L.R. § 1024 .............................................................16

                   a.    Plaintiffs Exercised Due Diligence to Determine the
                          Identity of John Doe 8 .........................................16

                   b.    PO Paulino and Defense Counsel were fairly
                          apprised of Mr. Quito's Original Complaint. ........18

                 2.    The Substitution Also Relates Back Under 15(c)(1)(C)....20

i

II.   The Court Should Grant Leave to Amend the Claims of Mr. Crespi, Mr. Lang, and Mr. Luis Rios Under Rules 15(a) and 16(b) ............................22

    A.   Leave is to be Freely Granted under Rule 15(a) ...........................23

    B.   Plaintiffs meet Rule 16(b)'s "good cause" standard .....................23

CONCLUSION ...........................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000) .......................................................................11

*Abdell v. City of New York*,
    759 F. Supp. 2d 450 (S.D.N.Y. 2010) .....................................................................18

*Abreu v. City of New York*,
    657 F. Supp. 2d 357 (E.D.N.Y. 2009) ......................................................................14

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005) ....................................................................................14

*Ainbinder v. Kelleher*,
    No. 92-CV-7315 (SS), 1997 U.S. Dist. LEXIS 10832 (S.D.N.Y. July
    25, 1997) (Sotomayor, J.) .........................................................................................21

*Archibald v. City of Hartford*,
    274 F.R.D. 371 (D. Conn. 2011) ..............................................................................20

*Barrett v. City of Newburgh*,
    720 Fed. App'x 29 (2d Cir. 2017) .............................................................................20

*Barrow v. Wethersfield Police Dep't*,
    66 F.3d 466 (2d Cir. 1995) ................................................................................20, 21

*Bowers v. City of Salamanca*,
    20-CV-1206 (JLV), 2021 U.S. Dist. LEXIS 129406 (W.D.N.Y. July
    12, 2021) ...................................................................................................................14

*Ceara v. Deacon*,
    68 F. Supp. 3d 402 (S.D.N.Y. 2014) ..................................................................16, 17

*Ceara v. Deacon*,
    916 F.3d 208 (2d Cir. 2019) ....................................................................................20

*Citi Connect, LLC v. Local Union No. 3*,
    20-CV-5147 (CM), 2020 U.S. Dist. LEXIS 185796 (S.D.N.Y. Oct. 7,
    2020) .........................................................................................................................14

*Dacosta v. Tranchina*,
    285 F. Supp. 3d 566 (E.D.N.Y. 2018) ......................................................................20

*Dougherty v. Town of North Hempstead Board of Zoning Appeal*,
   282 F.3d 83 (2d Cir. 2002) .......................................................................... 14

*Duran v. Cty. Of Monroe*,
   No. 19-CV-6341 (FPG), 2019 U.S. Dist. LEXIS 207071 (W.D.N.Y.
   Dec. 2, 2019) ............................................................................................... 16

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
   304 F.R.D. 170 (S.D.N.Y. 2014) ................................................................... 9

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013) ............................................................... *passim*

*Holmes v. Grubman*,
   568 F.3d 329 (2d Cir. 2009) ................................................................... 9, 23

*Huber v. Amtrak*,
   10-CV-9348 (ALC), 2012 U.S. Dist. LEXIS 173330 (S.D.N.Y. Dec. 4,
   2012) ............................................................................................... 11, 12, 13

*Kassner v. 2nd Ave. Deli., Inc.*,
   496 F.3d 229 (2d Cir. 2007) ................................................................. 11, 23

*Kroshnyi v. U.S. Pack Courier Servs., Inc.*,
   771 F.3d 93 (2d Cir. 2014) ......................................................................... 12

*Lawrence v. Starbucks Corp.*,
   08 Civ. 3734(LJS)(JCF), 2009 U.S. Dist. LEXIS 114909 (S.D.N.Y.
   Dec. 10, 2009) ............................................................................................... 9

*Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals
   Trading Co.*,
   94 Civ. 8301 (JFK), 1996 U.S. Dist. LEXIS 8842 (S.D.N.Y. June 24,
   1996) ........................................................................................................... 13

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
   734 F. Supp. 1071 (S.D.N.Y. 1990) ........................................................... 12

*Mabry v. N.Y.C. Dep't of Corr.*,
   No. 05-CV-8133 (JSR) (JCF), 2008 U.S. Dist. LEXIS 17283
   (S.D.N.Y. Mar. 7, 2008) ......................................................................... 16, 18

*U.S. ex rel. Mar. Admin. v. Continental Ill. Nat'l Bank & Trust Co.*,
   889 F.2d 1248 (2d Cir. 1989) ..................................................................... 12

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ................................................................. 12, 22

*Parker v. Columbia Pictures Indus.,*
 204 F.3d 326 (2d Cir. 2000) ...................................................................9

*Pettiford v. City of Yonkers,*
 14 Civ. 6271(JCM), 2021 U.S. Dist. LEXIS 116618 (S.D.N.Y. June
 21, 2021)..............................................................................................13

*Republic Nat'l Bank v. Hales,*
 75 F. Supp. 2d 300 (S.D.N.Y. 1999) ....................................................13

*Rogers v. Miller,*
 16-CV-3610 (AMD) (VMS), 2017 U.S. Dist. LEXIS 210280
 (E.D.N.Y. Dec. 21, 2017) .....................................................................18

*Ruotolo v. City of New York,*
 514 F.3d 184 (2d Cir. 2008) ...........................................................11, 23

*Salomon v. Adderley Indus., Inc.,*
 960 F. Supp. 2d 502 (S.D.N.Y. 2013) ..................................................10

*Scott v. Chipotle Mexican Grill, Inc.,*
 300 F.R.D. 193 (S.D.N.Y. 2014)..........................................................10

## Other Authorities

CPLR § 1024 ................................................................................................*passim*

Executive Order 202.8 (March 7, 2020)...........................................................14

FED. R. CIV. P. 12(b)(6) ...........................................................................12, 13, 14

FED. R. CIV. P. 15...........................................................................................*passim*

FED. R. CIV. P. 15(a) .......................................................................................9, 22

FED. R. CIV. P. 15(a)(2)..............................................................................1, 12, 22

FED. R. CIV. P. 15(c) ...................................................................................1, 9, 14

FED. R. CIV. P. 15(c)(1)(A) .......................................................................2, 15, 20

FED. R. CIV. P. 15(c)(1)(C) .......................................................................2, 15, 20

FED. R. CIV. P. 16(b))...................................................................................*passim*

FED. R. CIV. P. 16(b)(4) ......................................................................................9

FED. R. CIV. P. 16(b)(4) ...............................................................................12, 13

## INTRODUCTION

Plaintiffs respectfully seek leave to amend their Complaint in this action pursuant to the Court's Individual Rule 4(F) and Federal Rules of Civil Procedure 15 and 16. Specifically, Plaintiffs seek leave to file a Third Amended Complaint to: (1) substitute Police Officer Euris Paulino ("PO Paulino") who has been identified as the individual defendant John Doe 8 who is alleged to have unlawfully stopped and searched Edison Quito in the First and Second Amended Complaints, (2) specify the exact date of Mr. Quito's unlawful stop and search, (3) remove references to withdrawn plaintiffs Jameel Lang and Bonacio Crespi, (4) change the year of Luis Rios' unlawful stop and search, and (5) remove references to defendant "John Doe" officers 9 - 11 in the description of Mr. Luis Rios' unlawful stop and search. Each of these amendments is warranted.[1]

Under the Court's initial scheduling order, amendments to pleadings were to be filed by July 21, 2019. *See* ECF No. 17. As described below, good cause exists to grant Plaintiffs leave to file the proposed Third Amended Complaint because, despite Plaintiffs' persistent efforts to obtain relevant discovery, unexpected discovery delays made compliance with the July 21, 2019 deadline impossible. Plaintiffs have acted with diligence and good faith in pursuing this motion, easily satisfying the liberal standard of Rule 15(a)(2) and also meeting the "good cause" requirement of Rule 16(b).

Specifically, with respect to amendment (1), Plaintiffs are entitled to name PO Euris Paulino as a defendant because, although the statute of limitations has run, Plaintiffs can satisfy both relation back standards in Rule 15(c); that is, Plaintiffs can

---

[1] Defendants have represented to Plaintiffs that they only oppose amendments (1) and (2)—Mr. Quito's amendments which substitute PO Paulino for John Doe 8 and specify the exact date on which the incident took place--on grounds of futility and undue prejudice. Declaration of Cyrus Joubin ("Joubin Decl.") ¶¶ 4-7. Defendants have consented to all other proposed amendments described herein. *Id.*

meet the permissive standard under Rule 15(c)(1)(A) as well as the more challenging federal relation back standard in Rule 15(c)(1)(C).

With respect to amendment (2), good cause exists because Defendants did not produce discovery revealing the identity of the officer described in the First Amended Complaint as "John Doe 8," along with the exact date of the unlawful stop and search of Mr. Quito, until April 1, 2021. *See* Joubin Decl. ¶ 13.[2]  Plaintiffs diligently sought as much information as possible after April 1 to ensure the propriety of naming PO Paulino as a defendant.  *See id*. ¶¶ 14-23 (detailing Plaintiffs' efforts, including subpoenaing PO Paulino, meeting and conferring with Defendants on numerous occasions about Paulino's deposition and pursuing follow-up discovery, conducting depositions, obtaining a positive identification of Paulino by Quito).

Regarding amendment (3), Mr. Lang and Mr. Crespi have recently voluntarily withdrawn their claims as named plaintiffs in this lawsuit, justifying their removal from the caption and allegations.  *See* Order, ECF No. 139.  Regarding amendments (4) and (5), Plaintiffs' continuous and diligent investigation into the date of the NYPD's unlawful stop and records search of Mr. Luis Rios uncovered new information revealing that the incident took place in 2017, not 2018 as initially pleaded in the First Amended Complaint. Joubin Decl. ¶¶ 26-28; *see also* First Am. Compl., ECF No. 35.

In sum, Plaintiffs' proposed amendments are permitted under the language of the Federal Rules of Civil Procedure, supported by case law, justified by the facts of this case, and warranted in the interests of justice.

---

[2] Furthermore, Defendants did not agree to produce documentation relevant to this stop for several months, and did not produce PO Paulino for his deposition until June 30, 2021. Joubin Decl. ¶¶ 13-19. Key discovery related to this stop is still outstanding, and is the subject of continued negotiations between the parties. *See id*. at ¶¶ 21-23.

## **STATEMENT OF RELEVANT FACTS**

### ***Plaintiff Edison Quito's Proposed Amendments***

Plaintiff Edison Quito alleges that "one evening in the summer of 2017," two NYPD officers approached him, detained him, and demanded his ID while he was "standing on the sidewalk outside his apartment building at 351 Saint Nicholas Avenue in upper Manhattan." ECF No. 77 at ¶ 93 (Second Amended Complaint); *see also* ECF No. 35 at ¶ 93 (First Amended Complaint).  While "doing nothing unlawful or suspicious," Mr. Quito was stopped by "two male, plain-clothes police officers – PO Does 7-8, one white, the other Hispanic," who "emerged from their unmarked car." ECF No. 77 at ¶ 96. During this encounter, Mr. Quito provided his ID to the officers, who ran a records search while detaining him. *Id.* at ¶¶ 99-106.

For months, Plaintiffs have made diligent efforts to identify, depose, and gather additional discovery of the officers connected to Mr. Quito's stop.  Because of this diligence, and thanks to Court intervention that ordered Defendants to exercise transparency and flexibility in their audit processes, Plaintiffs have succeeded in identifying an officer – Euris Paulino – in connection with Mr. Quito's stop and records search.  Plaintiffs have further discovered the date, time, and exact spellings of Quito's names that he typed into the Domain Awareness System on a "Tablet" device.  Plaintiffs have discovered multiple levels of congruence between Quito's allegations and the information that has been revealed through discovery.  Plaintiffs now seek to amend the Complaint to reflect basic facts that they have diligently discovered.  Because of Defendants' delayed production of relevant discovery and witnesses, Plaintiffs are only now able to make this motion to amend the Complaint.

Specifically, Plaintiffs now seek leave to amend the Complaint to name PO Paulino in place of the "John Doe 8" officer who conducted the alleged stop and records search of Mr. Quito.  Documents produced in discovery indisputably indicate that PO Paulino conducted a record search on Mr. Quito within the alleged date range of the stop, near the alleged physical location of the stop, and around the alleged time of the stop. *See* Joubin Decl. ¶¶ 13-15.  Furthermore, PO Paulino matches the physical description provided by Mr. Quito in his May 7, 2021 deposition. *Id.* at ¶ 20. Finally, Mr. Quito, upon reviewing photographs of PO Paulino, has identified Paulino as one of the officers involved in the alleged stop and records search. *Id.* at ¶ 19.

Plaintiffs first discovered that PO Euris Paulino conducted a records search on Mr. Quito on April 1, 2021, when Defendant City of New York produced updated audits of their Domain Awareness System from their vendor, Vexcel, in their 10th Supplemental Disclosures. Joubin Decl. ¶ 13. These audits were conducted in accordance with the Court's December 15, 2020 Order, and included more expansive "fuzzy" search terms negotiated by the parties. *See* ECF No. 97; *see also* Joubin Decl. ¶ 9.

As discussed in the parties' status reports to date, Plaintiffs diligently pursued production of the Vexcel audits well before the audit results were actually produced on April 1, 2021.  Within one week of the Court's December 15, 2020 Order, Plaintiffs wrote to defense counsel asking what the audit capacities of Vexcel and the NYPD were regarding wildcard or fuzzy searches.  Joubin Decl. ¶ 10.  Defendants did not answer this definitively until February 25, 2021. *Id.* Despite not having answers as to the capabilities of Vexcel or the NYPD, Plaintiffs researched best practices in wildcard and fuzzy searches and sent proposed search terms on January 13, 2021. *Id.* No substantive

4

response was received from Defendants for another three weeks, despite follow-up by Plaintiffs. *Id.* After receiving clarification that fuzzy searches were possible, with several caveats, Plaintiffs immediately requested further clarification to finalize search terms but did not receive a substantive response for another three weeks – on February 25, 2021. *Id.* It was only then, over two months after the Court's December 15, 2020 Order, that it became clear that Vexcel was the most appropriate entity to conduct the fuzzy and wildcard audits. *Id.* Because of the delay, Defendant City of New York did not send Plaintiffs' proposed search terms to Vexcel until early March 2021. *See* Joubin Decl. ¶¶ 10-11; *see also id.* at ¶ 8 (describing how Defendants would not produce Vexcel audit documents responsive to Plaintiffs' Second Requests for Production, originally served one year prior on March 5, 2020); *id.* at ¶ 12 (Plaintiffs repeatedly asked for a direct line of communication with Vexcel; Defendants did not consent).

Provided by Defendants on April 1, 2021, the Vexcel audit results indicated that on July 14, 2017, at 10:30 p.m., PO Euris Paulino ran a DAS search for "Edison Pelaez," with a date of birth of 1/28/1993. This is one digit off from the actual date of birth of Mr. Quito, whose full name is Edison Quito-Pelaez. Joubin Decl. ¶ 13. Soon after this discovery, on April 5, 2021, Plaintiffs delivered, after notifying Defendants, a subpoena to PO Paulino. *Id.* at ¶ 14. Plaintiffs also sought follow-up discovery regarding PO Paulino's partner at the time of the incident, and both officers' memo books. *Id.* at ¶ 17. The parties met and conferred in the ensuing weeks, agreeing to conduct limited discovery to determine whether the incident involving PO Paulino's record search reasonably matched the allegations made by Mr. Quito. *Id.* at ¶¶ 14-17.

Through this limited discovery, Plaintiffs discovered that at the time of the record search, Paulino was working in the 26th  Precinct, the geographic boundaries of which include 351 Saint Nicholas Avenue, the address where Plaintiff alleges his stop and records search occurred in the First and Second Amended Complaints. Joubin Decl. at ¶ 14.  Plaintiffs also noted that the time of the records search, 10:30 p.m., was consistent with the time of day ("evening") that Mr. Quito alleged his ID was taken. *Id.* Plaintiffs also discovered that PO Paulino's partner wrote a summons for Quito at 10:30 p.m. on July 14, 2017 for alleged public urination one block away from 351 Saint Nicholas Avenue, the address where the stop of Mr. Quito is alleged to have occurred. *Id*. at ¶ 15*; see also* ECF No. 35 at ¶ 93.[3]

Mr. Quito's description of the male Hispanic officer involved in his alleged stop also matches Paulino's appearance at the time of the incident. Mr. Quito was deposed on May 7, 2021. During this deposition, Mr. Quito physically described the Hispanic officer involved in his alleged stop: the officer was "five-six, five-seven [in height], around there" (Quito Tr. 64:5-6) and "kind of chunky" (*Id.* at 61:13).  Joubin Decl. at ¶ 20.

PO Paulino was deposed on June 30, 2021 – nearly three months after Plaintiffs first sought to depose him.  *See generally* Joubin Decl. ¶¶ 13-18.  Despite Plaintiffs'

---

[3] The parties are engaged in continued factual discovery, and discovery disputes, related to the July 14, 2017 incident. Defendant City of New York has objected to, and delayed production of discovery – and objected to this proposed amendment to the Complaint – on the basis of its belief that the alleged stop described in the Complaint does not match the incident involving PO Paulino.  Defendants emphasize the fact that PO Paulino's record search coincided with the time written on an unpaid summons for public urination, purportedly served to Mr. Quito by PO Paulino's partner that day, PO Soul Kim (who has since retired, and moved abroad).  But significant questions surround this summons which have required continued discovery.  One question concerns the fact that according to Paulino's deposition testimony and memo book, he was in the 26th precinct stationhouse when the purported summons was issued to Quito. Additional factual questions are whether PO Paulino's assigned unit was uniformed or plainclothes, and which officer was Paulino's partner at the time of the alleged stop and records search. *See* Joubin Decl. at ¶¶ 21-23.

diligent efforts to depose Paulino earlier, it was not until the early afternoon of June 15, 2021 – the day Plaintiffs indicated they would contact the Court to compel Paulino to appear – that Defendants consented to his deposition. *See* Joubin Decl. at ¶ 18.  PO Paulino, who is Hispanic, described himself as "five nine" in height (Paulino Dep. 13:2) and "one-eighty" in weight (*Id*. at 13:5), with weight that has been "up and down" since July 14, 2017 (*Id*. at 13:9).  Quito was also accurate in describing Paulino as having "similar skin tone" to himself (Quito Dep. 64:12-13); that is, an olive complexion.  *See* Joubin Decl. ¶ 20.  Moreover, Quito's cousin and wife also corroborate essential details of the July 14, 2017 incident, such as the fact that it took place on a Friday.  *Id*.

On July 1, 2021, Mr. Quito reviewed photographs of PO Paulino, and confirmed that he was one of the officers who stopped him and took his ID in front of his building, as described in the First and Second Amended Complaints. Joubin Decl. at ¶ 19.

The parties continue to negotiate discovery related to the alleged stop.  *Id*. at ¶¶ 21-23. The following documents have been the subject of Plaintiffs' discovery requests: (1) The 26th Precinct log book that, according to Paulino, officers had to sign in and out of when they entered and exited the precinct, (2) All ICAD / Sprint Reports from July 14, 2017 that documented radio runs in connection with 351 St. Nicholas Avenue, (3) PO Paulino's disciplinary and personnel records in their entirety, including personnel records indicating the units / assignments within the 26th Precinct that he worked for in July 2017, (4) All patrol guide or other written NYPD policies regarding the "IMPACT OT" assignment, (5) All patrol guide or other written NYPD policies regarding the Conditions Unit of the NYPD, (6) All of Paulino's memo book entries from June 1 to September 1, 2017, (7) All documents describing the vehicles on the July 14, 2017 Roll

Call and in Paulino's memo book on July 14, 2017 – specifically, Vehicle Numbers #3116 and #3230 (Roll Call) and #3649 (memo book), and (8) PO Kim's memo book entries.  *Id*. Defendants have objected to or not committed to the production of these documents, and the parties continue to meet and confer to either resolve or ripen this dispute for the Court's disposition. *Id*.

### *Plaintiff Luis Rios' Amended Allegations*

In Plaintiffs' Second Amended Complaint, Plaintiff Luis Rios alleged that police officers stopped him and took his ID in the "late winter or early spring of 2018." ECF No. 77 at ¶ 108. But during non-party police officer Damani Morgan's deposition on December 30, 2020, PO Morgan testified that on March 12, 2018,  he conducted a background search of Mr. Crespi in connection to a car accident. Joubin Decl. at ¶ 28. Mr. Crespi recalled that this car accident took place the year after the stop and records search alleged in the Complaint. *Id.*  After Plaintiffs promptly notified Defendants of this update, the parties agreed that subsequent audits for Mr. Rios would focus on the year 2018 instead of 2017. *Id.* Defendants have consented to the proposed amendments that relate to Mr. Rios. *Id.* at ¶ 5.

### **ARGUMENT**

### I.   **The Court Should Grant Leave to Amend Mr. Quito's Claims Under Federal Rules of Civil Procedure 15 and 16(b)**

Plaintiffs seek to amend Mr. Quito's claims – specifically, to name Police Officer Euris Paulino and to specify July 14, 2017 as the date of the incident – because they have recently identified PO Paulino as John Doe 8, the officer who stopped Quito and demanded his ID one evening in the summer of 2017. Plaintiffs identified PO Paulino based on new information obtained through discovery, including a positive audit result

showing that PO Paulino searched the Domain Awareness System for Mr. Quito on July 14, 2017, and Mr. Quito's positive identification of PO Paulino through photographs. Joubin Decl. at ¶ 19.   Because of Plaintiffs' due diligence in making these discoveries, Plaintiffs will be able to meet the "good cause" standard under Rule 16(b), as well as the more liberal standard under Rule 15(a), in seeking to specify the date of the Quito incident as July 14, 2017.   And because Plaintiffs exercised due diligence to obtain the relevant discovery in the face of severe obstacles, Plaintiffs can also meet both relation back standards under Rule 15(c) in seeking to name Euris Paulino as a defendant.

### A.   Mr. Quito's Proposed Amendments Meet the "Good Cause" Standard Under Rule 16(b)

Where a motion for leave to amend is brought after the time period for amending pleadings has expired under a court's scheduling order, Rule 16(b)'s "good cause" standard, which is based on the "diligence of the moving party," is "balanced against" the more "lenient standard under Rule 15(a)." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003)); *see* FED. R. CIV. P. 16(b)(4).   No one factor is dispositive, and "a district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014).

### 1.   *Plaintiffs have acted diligently in identifying PO Euris Paulino and the exact date of Mr. Quito's stop and records search*

Good cause "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Diligence may be shown where the moving party acts with expediency upon discovering new information. *See Lawrence v.*

*Starbucks Corp.*, 08 Civ. 3734(LTS)(JCF), 2009 U.S. Dist. LEXIS 114909, at *9 (S.D.N.Y. Dec. 10, 2009) (good cause found where Plaintiffs moved as quickly as possible to amend the Complaint once potential plaintiffs requested inclusion in the action despite close of discovery). Indeed, delays caused by a discovery failure of the opposing party should not be a basis for denying an amendment. *See Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2013) (finding diligence where the relevant documents were not produced until after the deadline to amend had passed); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (good cause found where plaintiff learned critical information through discovery, which occurred after the deadline to amend had passed).

Plaintiffs' due diligence can be demonstrated in a number of ways.  First, in the face of Defendants' numerous objections and delays, Plaintiffs have obtained discovery identifying the officer who stopped Mr. Quito and the exact time and date of the incident. Second, it was through Plaintiffs' timely discovery requests, consistent follow up, successful motion to compel, and a number of other steps that led to the discovery of PO Paulino and the July 14, 2017, 10:30 p.m., date and time.  Third, it was through frequent communications and persistent efforts to obtain follow-up discovery that Plaintiffs were finally able to persuade Defendants to produce Paulino for his deposition.  Plaintiffs took Paulino's deposition as soon as Defendants made him available.  In all of these ways, as well as others detailed in the Joubin Declaration (ECF No. 143), Plaintiffs have acted with the due diligence required under Rule 16(b).

### 2. *Defendants are not unduly prejudiced by Mr. Quito's proposed Amendments*

The district court, in the exercise of its discretion under Rule 16(b), also may consider "other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Deli., Inc*., 496 F.3d 229, 244 (2d Cir. 2007). Prejudice requires a demonstration that the opponent will need to expend significant additional resources to conduct discovery or significantly delay the resolution. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008). The mere identification of a "John Doe" defendant, by a plaintiff who does "not wish to add any factual allegations to the Complaint or add any new causes of action," does not prejudice a defendant or justify denying leave to amend. *Huber v. Amtrak*, 10-CV-9348 (ALC), 2012 U.S. Dist. LEXIS 173330, at *22-23 (S.D.N.Y. Dec. 4, 2012), citing *Bernhard v. Central Parking System of N.Y., Inc*., 282 F.R.D. 284, 291-92 (E.D.N.Y. 2012).

Defendants would not be prejudiced by the proposed amendments of adding Paulino's name and specifying the date of the incident in lieu of "summer of 2017." Importantly, Plaintiffs are not adding any legal claims or new theories of liability; both amendments relate to the events in their prior complaint.  Further, Defendants cannot show unfair surprise by any of Plaintiffs' proposed amendments.  Defendants have had actual or constructive knowledge that Plaintiffs would likely seek to name PO Paulino as a defendant if they had a good faith basis to do so since early April 2021.  To the extent that the need to coordinate litigation strategy with an additional individually-named defendant-officer will mean more work for Defendants, the fact "that an amendment will require the expenditure of additional time, effort, or money [does] not constitute undue

11

prejudice." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal quotation marks omitted).   And Defendants have already coordinated with PO Paulino in connection with his deposition.

Finally, to the extent additional discovery is required – for example, discovery into PO Paulino's disciplinary history – that is no reason to deny leave to amend. Plaintiffs seek to amend before the close of discovery, and "[i]n any event, even if additional, limited discovery is required, the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial to amend a pleading." *U.S. ex rel. Mar. Admin. v. Continental Ill. Nat'l Bank & Trust Co.,* 889 F.2d 1248, 1255 (2d Cir. 1989) (internal quotation marks omitted).

### B.   Mr. Quito's Proposed Amendments Meet the Liberal Standards of Rule 15

The Federal Rules provide that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[i]n the absence of any apparent or declared reason...the leave sought should, as the rules require, be 'freely given.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 109 (2d Cir. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts should grant leave to amend when the moving party has "at least colorable grounds" for the proposed amendment. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1078 (S.D.N.Y. 1990). Under the liberal standard governing motions to amend, the Second Circuit has affirmed that amendments should only be denied "for good reason, including futility, bad faith, undue

delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200-01 (2d Cir. 2007).[4]

Here, Plaintiffs have acted diligently and carefully, motivated to obtain all relevant discovery as expeditiously as possible. Plaintiffs exhibited no dilatory motive whatsoever. *See Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 94 Civ. 8301 (JFK), 1996 U.S. Dist. LEXIS 8842, at *7 (S.D.N.Y. June 24, 1996)(finding no bad faith in "proposed amendments … based primarily on newly discovered evidence"). Nor are Plaintiffs' amendments untimely: Plaintiffs first learned of PO Paulino's record search of Mr. Quito on April 1, 2021, and sought to depose him immediately. Joubin Decl. at ¶¶ 13-14. Defendants did not produce PO Paulino for his deposition until June 30, 2021. *See id.* at ¶¶ 14-18. Mr. Quito positively identified PO Paulino as John Doe 8. *Id.* at ¶ 19.

In late July 2021, the parties reached an apparent impasse related to further discovery into the July 14, 2017 Quito incident. Joubin Decl. at ¶ 22. Plaintiffs filed the present motion about a week later. *Pettiford v. City of Yonkers*, 14 Civ. 6271(JCM), 2021 U.S. Dist. LEXIS 116618, at *11 (S.D.N.Y. June 21, 2021)(noting an amendment based

---

[4] "In the main, a proposed amendment should be reviewed under a standard analogous to the standard of review applicable to a motion brought under Rule 12(b)(6)." *Huber v. Amtrak*, 10-CV-9348 (ALC), 2012 U.S. Dist. LEXIS 173330, at *14 (S.D.N.Y. Dec. 4, 2012)(internal citations omitted). In rare cases where a motion to amend is brought "with the benefit of a full discovery record," some courts have held that such motions should be evaluated based on "whether the proposed amended complaint would be subject to dismissal under Rule 56 of the Federal Rules of Civil Procedure for lack of a genuine issue of material fact." *Id.* at *13 (allowing motion to amend, under a Rule 56 summary judgment standard, as defendant's arguments were "insufficient to demonstrate that Plaintiff could not prevail on her proposed claims…"). A key factor in determining whether to apply heightened summary judgment standards is whether the moving party has or "has not been denied an opportunity to present all material made pertinent to a Rule 56 motion." *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 309 (S.D.N.Y. 1999).
Here, Plaintiffs have only a *partial* discovery record, and therefore cannot present all material pertinent to a Rule 56 motion. Indeed, much of the outstanding discovery that Plaintiffs have long requested, but Defendants have withheld, goes to the heart of factual disputes related to Mr. Quito's alleged stop. *See supra,* n. 3. This motion therefore ought to be evaluated under Rule 12(b)(6)'s standards.

on "newly discovered information" in a deposition is not undue delay, denying motion to amend on other grounds). *See also supra*, Section I.A.1 (describing Plaintiffs' diligence in pursuing discovery related to Mr. Quito's alleged stop.)

Finally, the amendments would cause no prejudice to Defendants: here Plaintiffs are merely identifying a previously unidentified John Doe officer. *See Huber v. Amtrak,* 2012 U.S. Dist. LEXIS 173330, at *22-23 (S.D.N.Y. Dec. 4, 2012)(amendment merely naming a John Doe defendant does not prejudice a defendant or justify denying leave to amend). Defendants have had a good faith basis to know Plaintiffs would name PO Paulino as a defendant since April 2021, and have been in possession of some of Plaintiffs' discovery requests on the July 14, 2017 incident since then.  Joubin Decl. ¶ 17. On July 2, following PO Paulino's deposition, Plaintiffs served on Defendants written follow-up discovery requests, giving Defendants nearly two months to comply before the current close of discovery at the end of August.  Joubin Decl. at ¶ 21.

In determining whether a proposed amendment may be futile, "the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005). In making this determination, the Court must accept all facts alleged by Plaintiffs as true, and draw all reasonable inferences in their favor.  *Dougherty v. Town of North Hempstead Board of Zoning Appeal,* 282 F.3d 83, 91-92 (2d Cir. 2002).   The proposed Third Amended Complaint plausibly states Mr. Quito's claim for relief under § 1983.

C.   **Mr. Quito's Amendments Relate Back to His Original Complaint and Should Be Granted Under Rule 15**

Mr. Quito's amendments are also timely, as they relate back to the First Amended Complaint under Rule 15(c).[5] *Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009) ("A plaintiff who finds that the limitations period on his claim has run may still seek to amend his complaint to add additional defendants, but he will be bound by the requirement that the proposed amendment 'relate back' to the date that the original complaint was filed.") (citing Fed. R. Civ. P. 15(c); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996)). Under Rule 15(c)(1)(A), Mr. Quito's proposed amendment to name PO Paulino as a defendant relates back because, as set forth above, Plaintiffs have "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name" and have "describe[d] the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013).  Plaintiffs can also meet the more challenging federal relation back standard under Rule 15(c)(1)(C).

---

[5] Ordinarily, the statute of limitations for Mr. Quito's claims would have expired on July 14, 2020, because the statute of limitations for § 1983 actions in New York State is three years from the date of the incident, which was July 14, 2017. ECF No. 35, First Am. Compl. ¶ 93-107; *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). But on March 7, 2020, New York Governor Andrew Cuomo issued Executive Order 202.8, tolling statutes of limitations in New York during the height of the coronavirus pandemic; this Executive Order was extended until November 3, 2020.  The tolling of the statute of limitations in New York means that the statute of limitations in § 1983 cases are tolled as well.  *See Bowers v. City of Salamanca*, 20-CV-1206 (JLV), 2021 U.S. Dist. LEXIS 129406, *14-15 (W.D.N.Y. July 12, 2021) ("Because Executive Order 202.8 tolled the statute of limitations, the original [1983] complaint was timely here."); *see also Citi Connect, LLC v. Local Union No. 3,* 20-CV-5147 (CM), 2020 U.S. Dist. LEXIS 185796, at *10-11 (S.D.N.Y. Oct. 7, 2020). The statute of limitations toll from March 7, 2020 to November 3, 2020 – a 241-day period – means that the statute of limitations expired for Quito's claims on March 12, 2021.

### 1.    *The Substitution Relates Back Under 15(c)(1)(A) and N.Y. C.P.L.R. § 1024*

The Second Circuit has held that "Rule 15(c)(1)(A) permits an amended pleading to relate back when 'the law that provides the applicable statute of limitations allows relation back.'"  Hogan, 738 F.3d at 518 (quoting Fed. R. Civ. P. 15(c)(1)(A)).   In Section 1983 claims, state law governs the statute of limitations, and therefore New York's standards for relation back also apply. Id. The Hogan court explained that New York Civil Practice Law and Rules ("CPLR") § 1024 "provides a 'more forgiving principle of relation back' in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C)." 738 F.3d at 518-19.  CPLR § 1024 explicitly addresses suits involving unknown parties, stating:  "A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known.   If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly."  N.Y. C.P.L.R. § 1024.

Under CPLR § 1024, a plaintiff may substitute a named party for a John Doe defendant after the statute of limitations has expired if the plaintiff can satisfy two requirements.   Hogan, 738 F.3d at 518-19.   First, the plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." Id.  Second, the plaintiff must "describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant."   Id. at 519 (internal quotations and citations omitted).

> a.    *Plaintiffs Exercised Due Diligence to Determine the Identity of John Doe 8*

16

Under CPLR § 1024, due diligence "requires that a plaintiff show that he or she made timely efforts to identify the correct party before the statute of limitations expired." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014). "[T]o employ the procedural mechanism made available by [Section] 1024, the plaintiff must show that he made genuine effort[s] to ascertain the defendants' identities prior to the running of the Statute of Limitations." *Duran v. Cty. Of Monroe*, No. 19-CV-6341 (FPG), 2019 U.S. Dist. LEXIS 207071 (W.D.N.Y. Dec. 2, 2019) (quotation marks omitted); *see also Mabry v. N.Y.C. Dep't of Corr.*, No. 05-CV-8133 (JSR) (JCF), 2008 U.S. Dist. LEXIS 17283 (S.D.N.Y. Mar. 7, 2008) (permitting relation back where plaintiff "aggressively sought the identities of defendants" through letters and discovery requests).

Plaintiffs easily satisfy the due diligence requirement. As described above, Plaintiffs sought Paulino's identity in multiple discovery requests and diligently followed up; pressed for a fair and sensible audit that took into account typos; successfully moved to compel fuzzy audits; consistently followed up with Defendants about the progress of the audits; challenged Defendants' efforts not to allow discovery into the July 14, 2017 incident; conducted Paulino's deposition as soon as Defendants made him available; and sought to amend the Complaint soon after Paulino's deposition. Joubin Decl. at ¶¶ 8 - 19.[6] *See also Hogan*, 738 F.3d at 519 (determining that the plaintiff met the due diligence requirement under Section 1024 because he "diligently

---

[6] While Plaintiffs pushed to bring discovery disputes regarding Paulino to the Court's attention, the parties have been cautious not to bring an unripe dispute to the Court. Plaintiffs worked diligently to ripen the issue of confirming PO Paulino's identity as John Doe 8. Defendants repeatedly delayed Plaintiffs' requests, saying they needed more information to confirm or deny Paulino's involvement in the Quito incident, without adhering to agreed-upon timelines on obtaining or producing such discovery. *See* Joubin Decl. at ¶¶ 14-19, 21. Defendants waited until May 7, 2021 to depose Mr. Quito, and even though Quito provided an accurate description of Paulino during his deposition, Defendants continued to resist producing PO Paulino for deposition. *Id* at ¶ 16.. On the same afternoon that the parties were scheduled to call the Court about this issue, Defendants finally agreed to produce him. *Id*. at ¶ 18.

sought to identify" John Doe defendants by submitting "multiple discovery requests to the Attorney General's office"); *Ceara*, 68 F. Supp. 3d 402 (finding due diligence requirement satisfied where plaintiff wrote to the Inspector General, requesting the full names of the defendants, and received no response).

> **b.** *PO Paulino and Defense Counsel were fairly*
> *apprised of Mr. Quito's Original Complaint.*

The "fairly apprised" element has generally been construed to mean that the original Complaint "describe[s] the John Doe party in such a form as will fairly apprise the party that he is the intended defendant." *Hogan*, 738 F.3d at 51 (explaining that "because [plaintiff's] initial complaint describes with particularity the date, time, and location of the underlying incident, he satisfied CPLR § 1024.") (quotation marks omitted). "As enunciated in *Krupski v. Costa Crociere S.p.A.*, the burden to show lack of notice falls on Defendants, not Plaintiff." *Rogers v. Miller*, 16-CV-3610 (AMD) (VMS), 2017 U.S. Dist. LEXIS 210280, at *14 (E.D.N.Y. Dec. 21, 2017).

The First Amended Complaint sufficiently described the unlawful stop and search of Mr. Quito such that PO Paulino was fairly apprised. It described the incident with sufficient facts that PO Paulino ought to have known that he was being described as the Officer John Doe 8 in the Complaint. The Complaint described the building address ("351 St. Nicholas Avenue") where the incident took place, as well as the general time of day ("evening") and the season and year when the incident took place ("summer of 2017"). The Complaint also correctly described Police Officer Doe 8 – PO Paulino – as a male Hispanic officer. Further, the Complaint describes the conversation between Mr. Quito and the officers as well as Paulino's conduct in sufficient detail. If he had read the Complaint, Paulino should have recognized that it was describing his conduct.

Moreover, the fair appraisal requirement does not require actual notice; constructive notice is sufficient. *Abdell v. City of New York,* 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) ("Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew the additional defendants would be added to the existing suit."); *see also Mabry v. N.Y. City Dep't of Corr.,* No. 05-CV-8133 (JSR) (JCF), 2008 U.S. Dist. LEXIS 17283, at *16 (S.D.N.Y. March 7, 2008) (finding notice requirement satisfied where Corporation Counsel was aware of lawsuit and had knowledge of the identities that plaintiff sought to join).

Accordingly, PO Paulino's knowledge of the lawsuit may be imputed through the knowledge of the City Defendants and defense counsel, who either knew or should have known of PO Paulino's identity before the statute of limitations expired on March 12, 2021.[7] The City Defendants and their DAS vendors knew of the date and location of the incident, possessed records responsive to Plaintiffs' Second Requests for Production (served on March 5, 2020), and were furthermore compelled to produce the records by the Court in its December 15, 2021 Order. ECF No. 97. These responsive records included data showing that PO Paulino conducted a records search of Mr. Quito and that a summons was written with Quito's name on July 14, 2017. *See* Joubin Decl. at ¶ 13. Both records are evidence that there was an interaction between PO Paulino and Mr. Quito in the same time period alleged in the First Amended Complaint. But Defendants

---

[7] *See supra* n. 5 for an explanation on the statute of limitations calculation.

did not disclose these records to Plaintiffs until after the statute of limitations had expired.

In fact, while Defendants' constructive knowledge is sufficient to satisfy CPLR § 1024's requirement of fair apprisal, it is quite possible Defendants *actually* possessed the audit results showing PO Paulino conducted a record search of Mr. Quito at the time that the statute of limitations expired on March 12, 2021. Defendants produced the audit results on April 1, 2021, months after the Court ordered fuzzy search audits and Plaintiff initially proposed their fuzzy search terms. Joubin Decl. at ¶¶ 10, 13. Defendant City of New York either knew of these records—and the likelihood that Plaintiffs would seek to substitute PO Paulino for John Doe 8—before the expiration of the statute of limitations, or delayed obtaining these records that were within their custody and control such that their production of these records made a timely amendment impossible. Because of these circumstances, Defendant City of New York and PO Paulino should be deemed to have been fairly apprised of the claims against him.

### 2. *The Substitution Also Relates Back Under 15(c)(1)(C)*

Plaintiffs need only satisfy the requirements of Rule 15(c)(1)(A) and N.Y. C.P.L.R. § 1024 to prevail on this present motion. *See Barrett v. City of Newburgh*, 720 Fed. App'x 29, 32 (2d Cir. 2017); *Hogan*, 738 F.3d at 518-20 (holding that Hogan was time-barred from amending his complaint under the federal relation back standard, but that his amendment was to be allowed under Rule 15(c)(1)(A) due to New York's more permissive relation back standard). As in *Hogan*, Plaintiffs need not satisfy the more stringent federal standard (Rule 15(c)(1)(C)) for success on this motion; however, Plaintiffs contend that they can meet this standard under the approach to Rule 15(c)(1)(C)

taken by a persuasive minority of courts in this circuit. *See Dacosta v. Tranchina*, 285 F. Supp. 3d 566 (E.D.N.Y. 2018) (Weinstein, J.); *Archibald v. City of Hartford*, 274 F.R.D. 371, 372 (D. Conn. 2011).

In *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), the Second Circuit held that the federal relation back doctrine applies only to mistakes of identity, *not* to lack of knowledge of a John Doe defendant's name.  *See also Ceara v. Deacon,* 916 F.3d 208 (2d Cir. 2019) (upholding the *Barrow* rule).  But some district courts in this circuit have determined that an equitable exception to the *Barrow* rule exists where defendants' discovery delays lead to the expiration of the statute of limitations before plaintiffs are able to amend their complaint. *See Archibald,* 274 F.R.D. at 372 (finding an "exception" to the *Barrow* rule where "the originally named defendants unreasonably delay[ed] in producing relevant information that the plaintiff could use to identify the Doe parties"); *see also Dacosta*, 285 F. Supp. 3d at 566. Such an exception applies here.

The rationale for an equitable exception to the *Barrow* rule is strong in this case because Defendants' discovery delays caused Plaintiffs to miss the statute of limitations (which expired on March 12, 2021) for naming Paulino.  Specifically, Defendants' (i) nearly two-and-a half-month delay in obtaining the NYPD's and Vexcel's audit capabilities (from December 15, 2020 to February 25, 2021; *see* Joubin Declaration ¶¶ 9-10), and (ii) nearly three months of unreasonably refusing to produce PO Paulino for his deposition (from April 5 to June 30, 2021; *see id*. at ¶¶ 14-18) amounted to over five months of unreasonable delay that prevented Plaintiffs from seeking leave to name Paulino as a defendant, consistent with their duties under Rule 11, until now.  Add to this

five-and-a-half-month period of the delay the additional delay caused by Defendants' unreasonable insistence that they alone should decide the audit search criteria (requiring Court intervention on December 15, 2020; *see id*. at ¶¶ 8-9), and it becomes quite clear that were it not for Defendants' unreasonable, time-consuming discovery actions, Plaintiffs would have been able to move to name Paulino well before the March 12, 2021 deadline.

Accounting for Defendants' discovery delays and dilatory tactics as an equitable exception to the categorical interpretation of the *Barrow* rule is consistent with the principle of equitable tolling. *See Ainbinder v. Kelleher*, No. 92-CV-7315 (SS), 1997 U.S. Dist. LEXIS 10832, at *15-16 (S.D.N.Y. July 25, 1997) (Sotomayor, J.) ("In this Circuit, equitable tolling stops the running of the statute of limitations in cases where the defendant's actions have prevented the plaintiff from discovering that he has a cause of action….").

## II.    The Court Should Grant Leave to Amend the Claims of Mr. Crespi, Mr. Lang, and Mr. Luis Rios Under Rules 15(a) and 16(b)

The final set of proposed amendments involves claims brought by Mr. Luis Rios, who was unlawfully stopped and records-searched while waiting for a friend outside of an apartment building in Harlem in 2017. The proposed Third Amended Complaint removes Mr. Lang and Mr. Crespi, who were recently voluntarily withdrawn as named plaintiffs from the case. *See* Order, ECF No. 139. Mr. Luis Rios remains a named plaintiff in this matter, and through continuous and diligent investigation, Plaintiffs uncovered new information revealing that the unlawful stop and search of Mr. Crespi, Mr. Lang, and Mr. Rios took place in 2017, not 2018 as initially pleaded in the First Amended Complaint. *See* Joubin Decl. at ¶¶ 26-28; First Am. Compl., ECF No. 35.

Finally, Plaintiffs seek to withdraw references to "John Doe" officers 9 – 11 in the description of the unlawful stop and search of Mr. Luis Rios and his acquaintances. Defendants have consented to these proposed amendments, but even without Defendants' consent, the standards for amendments are easily satisfied.

### A.     Leave is to be Freely Granted under Rule 15(a)

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit permits denial of leave to amend only "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200-01 (2d Cir. 2007). No such good reason exists for denying the amendments of Mr. Crespi, Mr. Lang, and Mr. Luis Rios' claims, Defendants have consented to these amendments, and as such, leave should be granted.

### B.     Plaintiffs meet Rule 16(b)'s "good cause" standard

As discussed *supra* Section I.B, Plaintiffs must meet Rule 16(b)'s "good cause" standard when seeking leave to amend after the time period for amendments in the court's scheduling order has expired. The "good cause" standard is based on the "diligence of the moving party" (*Holmes*, 568 F.3d at 334) and considerations of "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244. Prejudice requires a demonstration that the opponent will need to expend *significant* additional resources to conduct discovery or significantly delay the resolution. *See Ruotolo*, 514 F.3d at 192.

Here, Plaintiffs satisfy the diligence requirement. On July 31, 2020, Defendants disclosed a records search of Bonacio Crespi that took place on March 12, 2018. Joubin Decl. at ¶¶ 27-29.  Plaintiffs immediately sought follow-up discovery on the identity of

the officer who conducted the records search and any documents (such as memo book entries) explaining why the records search was conducted.  *Id.* at ¶ 27.  Defendants subsequently identified the officer as Damani Morgan and, on December 29, 2020, provided Plaintiffs with PO Morgan's memo book entries. *Id.* On December 30, 2020, Plaintiffs conducted PO Morgan's deposition, at which point it became clear that the March 12, 2018 records search that Defendants disclosed was not the incident described in the Complaint.  PO Morgan testified that he conducted a background search of Crespi in connection with a car accident on March 12, 2018. *Id.* at ¶ 28.  Crespi recalled that the accident took place the year after the incident alleged in the Complaint.  *Id.* Plaintiffs promptly notified Defendants of this, and all subsequent audits in connection with the Crespi-Rios-Lang incident were, with the consent of both parties, directed to the year 2017 instead of 2018. *Id.*

Finally, Defendants have consented to these final three amendments, and as such, no prejudice will result.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask this Court to grant their motion for leave to file the Third Amended Complaint and such other relief as the Court deems just and proper.


DATED:        New York, New York
              August  6, 2021


                                        Respectfully submitted,



                                        By: _____

24

CYRUS JOUBIN
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com


GEORGE FARAH
MATTHEW HANDLEY
REBECCA P. CHANG
33 Irving Place
New York, NY 10003

MATTHEW HANDLEY
HANDLEY FARAH &
ANDERSON PLLC
777 6th Street NW, 11th Fl.
Washington, DC 20001


DAVID J. KAHNE
TALONA H. HOLBERT
MICHAEL G. MALLON
STROOCK & STROOCK &
LAVAN LLP
180 Maiden Lane
New York, NY 10038


MOLLY GRIFFARD
COREY STOUGHTON
THE LEGAL AID SOCIETY
199 Water Street, 6th Floor
New York, New York 10038

*Attorneys for Plaintiff*